IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| BRIAN MURRAY, | ) | |
| | ) | No. 2:18-cv-2059-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| L. FRANK CISSNA, *Director,* | ) | |
| *United States Citizenship and* | ) | |
| *Immigration Services*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the motion of L. Frank Cissna, Director of the United States Citizenship and Immigration Services ("USCIS"), to dismiss, ECF No. 7. For the reasons set forth below, the court **DENIES** the motion to dismiss and **STAYS** the case.

## I.  BACKGROUND

This matter arises out of plaintiff Brian Murray's ("Murray") application for naturalization. Murray is an Irish citizen who first entered the United States on February 15, 2004; he then stayed beyond the 90 days allotted under his visa. At some point he married Maria Contri ("Contri"), a U.S. citizen, and on May 12, 2011, Contri filed a petition for an Alien Relative, while Murray filed an Application to Register as a Permanent Resident. On September 6, 2011, Murray was granted conditional permanent resident status. On March 4, 2013, Murray became a full lawful permanent resident. On June 20, 2014, Murray filed an Application for Naturalization. On November 5, 2014, USCIS opened a fraud investigation into Murray's marriage. On April 8, 2015, Murray and Contri divorced, and a week earlier, Murray withrdrew his Naturalization

1

Application that was based on his marriage to Contri. On October 14, 2016, after Murray had been a lawful permanent resident for five years, he filed another Naturalization Application. On March 2, 2017, USCIS conducted a naturalization interview with Murray.

On April 30, 2018, USCIS issued to Murray a Notice to Appear ("NTA") for removal proceedings and a Record of Deportable / Inadmissible Alien letter. Notably, the NTA did not include a date or time for when Murray needed to appear before an immigration judge ("IJ")—the letter merely indicated that the time and date were "to be set." ECF No. 7-1 at 4. On July 26, 2018, Murray brought this suit because USCIS has not given him a decision on his application within 120 days after his interview, as required by 8 U.S.C. § 1447(b). On September 27, 2018, USCIS filed a motion to dismiss. ECF No. 7. On October 15, 2018, Murray filed his response. ECF No. 10. On October 22, 2018, USCIS filed its reply. ECF No. 11. The court held a hearing on this matter on November 28, 2018. The motion has been fully briefed and is ripe for the court's review.

## II. DISCUSSION

Murray brings this suit under 8 U.S.C. § 1447(b), asking the court make a determination on his application for naturalization as a United States citizen. An applicant begins the naturalization process by filing an "Application for Naturalization" with the Department of Homeland Security and USCIS. Ndumu v. U.S. Dep't of Homeland Sec., 2014 WL 5495680, at *1 (D. Md. Oct. 29, 2014) (citing 8 U.S.C. § 1445(a), (d)). Thereafter, USCIS must conduct a background investigation of the application. 8 U.S.C. § 1446(a). After USCIS completes the background investigation

2

and examination of the application, a USCIS official grants or denies the application. 8 U.S.C. § 1446(d); 8 C.F.R. §335.3. The official must make this decision within 120 days following the initial examination of the applicant. Id. If USCIS fails to make the determination within 120 days of the interview, "8 U.S.C. § 1447(b) provides that a naturalization applicant may file a lawsuit seeking the adjudication of his application[.]" Abusamhadneh v. Napolitano, 2010 WL 1734772, at *1 (E.D. Va. Apr. 26, 2010).[1] "The statute vests the district court with jurisdiction over these cases, and courts 'may either determine the matter or remand the matter, with appropriate instructions, to the [Agency] to determine the matter.'" Chetverikov v. Napolitano, 2010 Wl 1413088, at *1 (D. Md. Mar. 31, 2010) (quoting Etape v. Chertoff, 497 F.3 379, 383 (4th Cir. 2007)).

USCIS asks the court to dismiss Murray's claim under 8 U.S.C. § 1429, which states that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act . . . ." 8 U.S.C. § 1429 (emphasis added). In response, Murray raises three arguments: (1) removal proceedings have not actually commenced because the NTA does not indicate the time and place; (2) the court is not precluded from hearing the case by § 1429 because the agency did not issue a "warrant of arrest"; and (3) even if the court finds that removal proceedings have

---

[1] The majority of courts have found that "examination" in § 1447(b) refers to the interview that USCIS conducts after receiving a naturalization application, not the completion of its entire review of the application, including background checks. See, e.g., Manzoor v. Chertoff, 472 F. Supp. 2d 801, 803–04 (E.D. Va. 2007) ("It is clear from the plain language of these regulations that the term 'examination' in 8 U.S.C. § 1447(b) means the initial interview of an applicant."), Antonishin v. Keisler, 627 F. Supp. 2d 872, 874–84 (N.D. Ill. 2007) (agreeing with "the majority view that the 'examination' is the applicant's interview").

3

commenced, there is a circuit split on whether removal proceedings actually prevent district courts from adjudicating suits brought by applicants under § 1447(b). The court finds persuasive Murray's arguments on this second point—that the court should not dismiss the case because there is not "pending against [Murray] a removal proceeding pursuant to a warrant of arrest" as required by § 1429. As the court bases its decision to deny the motion to dismiss on this ground, it refrains from making a determination on the other grounds raised by Murray.

Murray argues that the court should not be restricted by § 1429 from considering his naturalization application because, although he was served a NTA, he has not been placed in removal proceedings "pursuant to a warrant of arrest" as required to trigger § 1429. Section 1429 provides that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act." 8 U.S.C. § 1429. Removal proceedings are initiated by issuing a NTA under 8 U.S.C. § 1229. Section 1229 itself does not have any reference to "warrant" or "arrest," and it does not purport to authorize warrants arrests, or detention. Furthermore, Section 1429 does not define "warrant of arrest," although 8 U.S.C. § 1226(a) gives the Attorney General the authority to issue a warrant for arrest to detain an alien "pending a decision on whether the alien is to be removed from the United States." Nevertheless, the agency tasked with interpreting § 1429 determined that "a notice to appear . . . shall be regarded as a warrant of arrest." 8 C.F.R. § 318.1. The court must now consider whether this regulation, 8 C.F.R. § 318.1, is an improper interpretation by an administrative agency of Congress's use of "warrant of arrest" in § 1429.

4

Courts review an agency's interpretation of the statute it administers under the two-step procedure provided by the Supreme Court in Chevron v. Nat. Res. Def. Council, 467 U.S. 837 (1984). First the court considers "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. However, if Congress has not directly addressed the "precise question at issue," for example "if the statute is silent or ambiguous with respect to the specific issue," then the court must decide" whether the agency's answer is based on a permissible construction of the statute." Id. "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." Id. n.9. "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42 (1979).

The appropriateness of the agency's interpretation of § 1429's use of the phrase "warrant of arrest" in 8 C.F.R. § 318.1 has recently come into question with Yith v. Nielsen, in which the Ninth Circuit found that "Congress clearly defined 'warrant of arrest' as a writ that issues to arrest and detain an alien, and is not the same as a notice to appear." 881 F.3d 1155, 1168 (9th Cir. 2018). Until Yith, the only circuit court to consider § 318.1 was the Seventh Circuit in Klene v. Napolitano, 697 F.3d 666 (7th 2012). The majority of the Klene decision revolved around whether federal courts, and not merely the Attorney General, are precluded by § 1429 from adjudicating claims

asking that the court consider a naturalization application.[2] After a lengthy discussion articulating that § 1429 did not prevent the district court from adjudicating Klene's § 1421(c) petition, the Seventh Circuit made "[a] final observation." Klene, 697 F.3d at 669. In considering Klene's argument that the district court must decide her case on the merits, the Seventh Circuit pointed to 8 C.F.R. § 318.1's mandate that a notice to appear be treated as a warrant of arrest. The court found that "an agency can't rewrite statutory terms, but it can define its own vocabulary" and that "since 'arrest' does not imply custody even in police parlance (full custodial arrests are a subset of all arrests), there's no logical problem with an agency calling its official process a 'notice to appear' and a 'warrant of arrest' at the same time, without needing to issue two separate documents."[3] Id. Most district courts to consider the matter similarly relied on § 318.1 without questioning whether it was a reasonable interpretation of § 1429.

In Yith, the Ninth Circuit engaged in the first substantial analysis of § 318.1 undertaken by any court, finding that this regulation was not, in fact, a reasonable interpretation by the agency of Congress's intended meaning of "warrant of arrest" in § 1429. The plaintiffs in Yith brought a complaint in district court pursuant to 8 U.S.C. § 1447(b). The district court determined that the plaintiffs were unable to obtain relief because they were in removal proceedings and concluded that a notice to appear qualifies as a warrant of arrest. The Ninth Circuit then considered whether, under Chevron, the agency's construction of § 1447(b) was appropriate, declaring that if under the

---

[2] Although, unlike in the current case, Klene involved an appeal under § 1421(c) asking that the court review the USCIS's denial of Klene's naturalization application.
[3] Ironically, USCIS does have two separate documents for (1) a NTA, Form I-862, and (2) a Warrant for Arrest of Alien, Form I-200.

"traditional means of determining Congress's intentions[] we can determine that Congress clearly defined 'warrant of arrest,' then we may not defer to DHS's contrary interpretation." Yith, 881 F.3d at 1166.

The court found that the "plain terms of § 1429 directly addresses the precise question at issue" and that the meaning of "warrant of arrest" in § 1429 is unambiguous. Id. The court first referred to the dictionary definition of (1) "warrant" as a "a writ directing or authorizing someone to do an act, esp. one directing a law enforcer to make an arrest, a search, or a seizure" and of (2) "arrest" as a "a seizure or forcible restraint" or "the taking or keeping of a person in custody by legal authority, esp. in response to a criminal charge." Id. (quoting Black's Law Dictionary (10th ed. 2014)). The Ninth Circuit then relied on the dictionary definition of "warrant of arrest" as meaning a "warrant issued by a disinterested magistrate after a showing of probable cause, directing a law-enforcement officer to arrest and take a person into custody." Id. "In other words, the plain meaning of the term 'warrant of arrest' is an order authorizing law enforcement to seize and detain a person as necessary for the administration of law." Id. Given this interpretation of "warrant of arrest," the Ninth Circuit found that it is a distinct document from "notice to appear." Id.

In reaching this conclusion, the court relied upon the fact that a NTA under § 1229(a) "does not direct law enforcement to arrest and detain the alien," viewing the NTA instead as being "akin to a summons that provides an alien with specified information regarding removal proceedings." Id. at 1167. "Further, unlike warrants of arrest, notices to appear are required in all removal proceedings." Id.; see 8 C.F.R. § 1239.1(a). The Ninth Circuit reasoned that "[i]f Congress intended to preclude the

government's consideration of a naturalization petition whenever the applicant was in removal proceedings, then it would have had no need to state that § 1429 is applicable only when a removal proceeding is 'pursuant to a warrant of arrest.'" Id.

This court agrees and finds Yith's analysis far more convincing that the two sentences devoted to the issue in Klene. The agency's decision that a notice to appear would suffice as a "warrant of arrest" as required by § 1429 is a faulty interpretation of Congressional intent and an impermissible reading of that statute. Considering "warrant of arrest" to be the same as an NTA would make it unnecessary to even have the phrase "pursuant to a warrant of arrest" included in § 1429, which is "contrary to our general reluctan[ce] to treat statutory terms a surplusage." Yith, 881 F.3d at 1167 (internal quotations omitted). Thus, the court finds that the NTA that was issued to Murray does not satisfy § 1429's requirement that he be in removal proceedings "pursuant to a warrant of arrest." Because § 1429 is not in effect in Murray's case and does not preclude the court from considering his suit under § 1447, the court denies the motion to dismiss.

The question then becomes how to proceed with this suit. In Dilone v. Nielsen, the District of Maryland denied a motion to dismiss a § 1447 claim—albeit on different grounds than currently relied upon by this court—but chose to stay the case in order to give DHS time to complete the plaintiff's removal proceedings, "provided they do so expeditiously." 358 F.Supp.3d 490, 504 (2019). The court finds wisdom in this decision. It is possible that the two parallel tracks of Murray's immigration proceedings—the naturalization application before this court and the removal proceedings before the agency—could produce inapposite factual and legal conclusions. Furthermore, the legislative history of this country's immigration laws "suggest that Congress intended

8

removal proceedings to have priority over naturalization proceedings." Zayed v. United States, 368 F.3d 902, 905 (6th Cir. 2004). "Section 1429 was designed to end this 'race between the alien to gain citizenship and the Attorney General to deport him.'" Id. (quoting Shomberg v. United States, 348 U.S. 540, 543 (1955)). "That objective was accomplished by according priority to removal proceedings." Id. As such, the court stays the proceedings until DHS concludes its removal proceedings.

### III. CONCLUSION

For the foregoing reasons, the court **DENIES** the motion to dismiss and **STAYS** the proceedings pending the conclusion of Murry's removal proceedings.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**June 4, 2019
Charleston, South Carolina**